IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

DAVID LEWIS HOLLAND,

    Petitioner,

v.

                                           Civil Case 2:25-CV-086-Z

DIRECTOR, TDCJ-CID,

    Respondent.

## MEMORANDUM OPINION AND ORDER

Petitioner David Lewis Holland ("Holland") filed a petition for writ of habeas corpus under 28 U.S.C. Section 2254. ECF No. 3. Having considered the petition, the response, the reply, the record and applicable authorities, the Court **DENIES** Holland's petition for the reasons set forth below.

### PROCEDURE

On May 25, 2022, Holland was convicted by a jury in the 108th Judicial District of Potter County, Texas, on counts of arson, unlawful possession of a firearm, evading arrest/detention with a motor vehicle and aggravated assault with a deadly weapon. He was sentenced to concurrent 99-, 20-, 5- and 80-year sentences of imprisonment. ECF No. 21-1 at 19, 25, 27, 29. Although Holland pled "not guilty" to the charges, he pled true to an enhancement allegation (a prior felony conviction for organized crime-aggravated robbery). *Id.* The jury found the allegation to be true. *Id.*

On May 1, 2023, the Court of Appeals for the Seventh Judicial District of Texas affirmed the judgments of the trial court. *Holland v. State*, 2023 WL 3179233 (Tex. App.— Amarillo, May 1, 2023, pet. ref'd). On September 6, 2023, the Texas Court of Criminal Appeals ("TCCA") refused Holland's petitions for discretionary review ("PDR"). ECF No. 21-1 at 129– 32. The U.S. Supreme Court denied certiorari on February 20, 2024. *Holland v. Texas*, No.

23-6192, 144 S. Ct. 836 (Feb. 20, 2024) (Mem). On December 23, 2024, Holland filed a state application for writ of habeas corpus with the TCCA. ECF No. 17-46 at 45–165; ECF No. 17-47 at 1–24. On March 26, 2025, the TCCA denied Holland's habeas application without written order. ECF No. 17-48.

Holland timely filed this petition on April 11, 2025, asserting the following grounds for relief:

1. The trial court improperly failed to issue trial subpoenas that Holland had requested (Count One);

2. His trial counsel was ineffective for (a) failing to call witnesses; (b) failing to investigate; (c) failing to present mitigating evidence; (d) failing to assert Holland's speedy trial rights; and (e) failing to ensure that Holland's trial subpoenas were issued (Count Two);

3. The trial court improperly denied his request for a private investigator and video forensic expert to assist in his defense (Count Three);

4. His appellate counsel was ineffective (Count Four); *and*

5. He was denied his right to a speedy trial (Count Five).

ECF No. 3. On September 19, 2025, the government filed an Answer, alleging that Holland's claims were meritless and procedurally barred. ECF No. 21. Holland filed a Reply, disputing the government's position. ECF No. 26.

STANDARD OF REVIEW

Title 28 U.S.C. Section 2254 authorizes a federal court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. Section 2254(a). However, a court may not grant relief on any claim that was adjudicated on the merits in the state court proceeding unless the petitioner shows that the prior adjudication:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. Section 2254(d). A decision is contrary to clearly established federal law if the state reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id.* at 413.

Federal Court review of habeas corpus petitions by *state* prisoners is exceedingly narrow. When reviewing state proceedings, "federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn,* 780 F.2d 509, 513 (5th Cir. 1986). Instead, a person seeking federal habeas corpus review must assert a violation of a *federal* constitutional right. *Lowery v. Collins,* 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir. 1996). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 102–03 (2011). The petitioner must show that there was no reasonable basis for the state court to deny relief. *Id.* at 98.

Deference to the state court's ruling applies even when the state court decides an issue without fully explaining its reasoning. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003); *accord Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011) (per curiam) ("[D]eference due under § 2254(d)(1) is not diminished by the fact that the [state court] did not explain the reasons for its determination."). This is because "a federal habeas court only reviews the reasonableness of the state court's ultimate decision," "not the written opinion explaining that decision." *Schaetzle*, 343 F.3d at 443 (*quoting Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)). Thus, in reviewing a state court opinion, this Court focuses on "the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal*, 286 F.3d at 246.

When applicable, the state court's findings of fact "are 'presumed to be correct' unless the habeas petitioner rebuts the presumption through 'clear and convincing evidence.'" *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (quoting 28 U.S.C. § 2254(e)(1)). This presumption extends not only to express findings of fact, but to the implicit findings as well. *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted). In determining whether the state court decision was unreasonable, this Court must not substitute its judgment for that of the state court. Stated differently, a determination that the state court reached the wrong result or that the state court decision was incorrect is insufficient. Denial of relief by the state court based on a factual determination will not be overturned unless the state court's decision is objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

### FACTS

Brittany McNutt ("McNutt") dated Holland and lived with him briefly in early 2021. ECF No. 17-12 at 103–05. She ended the relationship and moved out in April 2021. *Id.* at

4

105–06. She moved into a mobile home belonging to James Moore ("Moore"), who was a mutual acquaintance of McNutt and Holland. *Id.* at 106, 108. At some point after McNutt moved in with Moore, they began a relationship. *Id.* at 138. On the morning of April 18, 2021, McNutt was brewing coffee when she heard a noise that sounded like water or other liquid pouring outside the home. *Id.* at 112. She testified that she checked the security system video monitor and saw Holland moving around the house while holding something that she could not recognize on camera. *Id.* at 112–13. She also smelled gasoline. *Id.* at 113.

Both McNutt's testimony and the video showed that McNutt opened the front door to confront Holland and saw him pouring gasoline on Moore's truck. *Id.* at 113–26. She was sure the individual was Holland. *Id.* at 115, 125. McNutt yelled at him from the door of the trailer. Holland pulled a gun out of the pocket of the hoodie he was wearing, dropped it, picked it up, and shot at McNutt eight or nine times, narrowly missing her. *Id.* at 114–126. The video was admitted in evidence and played for the jury. *Id.* at 118–19.

Holland then fled the scene. *Id.* at 125. McNutt and Moore did not report the incident for fear of retaliation. *Id.* at 128, 141. A week later, on April 25, 2021, neighbors awakened Moore and McNutt at 1:30 a.m. to alert them of a fire outside their mobile home. *Id.* at 147–48. The neighbors nearly extinguished the fire, but it nonetheless damaged the home. The neighbors called the fire department before waking Moore and McNutt. *Id.* at 129, 147. Police also arrived at the scene, and McNutt and Moore identified Holland as a potential suspect. *Id.* at 177. The incident also was captured on security system video, which showed Holland outside the trailer home, pouring gasoline. *Id.* at 150–53. The gas can was left at the scene. *Id.* at 172, 228. In addition, a car identified as Holland's vehicle was visible in the video. *Id.* at 150, 154–55.

The second video also was admitted in evidence and played in court. *Id.* at 149. Moore testified that he recognized Holland on the video "by the tattoos, by the facial features, by the glasses, the entire stature of his body, everything." *Id.* at 153.

Police drove to Holland's apartment building, found his car, and started surveillance. *Id.* at 188. As officers were conducting surveillance, Holland got into his vehicle and drove away. *Id.* at 189. Police followed and initiated a traffic stop, which escalated into a felony stop. *Id.* at 190. Holland initially complied with officers' orders but then fled in his vehicle. *Id.* at 190–91. The officers then pursued Holland in a lengthy chase through Amarillo that ended only after police successfully spiked the tires on Holland's car. *Id.* at 191–93. A concerned citizen found a gun that Holland apparently discarded during the chase. ECF No. 17-13 at 8–11. Ballistics revealed it was the gun that fired bullets aimed at McNutt on April 18, 2021. *Id.* at 85. DNA testing confirmed that Holland once held the discarded gun. *Id.* at 125. Testimony from Contessa Perry, Holland's girlfriend at the time of the events in question, showed that Holland called her from jail and asked her to go look for his gun "that was thrown out of the window" at the corner of Bell and Interstate 40 in Amarillo. *Id.* at 98.

Holland testified in his own defense. He stated he was not at Moore's mobile home on the nights at issue and that the videos must have been altered by inserting "my car or a car like mine" and "my face or someone like me." *Id.* at 152. He admitted running from police and throwing his gun out of the car during the chase. *Id.* at 136, 142. Holland stated that the gun went missing when McNutt relocated but was "back in my car the morning of the chase." *Id.* at 137. He surmised that McNutt or Moore must have placed the gun in his car to give police an excuse to shoot him. *Id.* Holland testified that he ran from the police because he saw the gun in his car and assumed the police would shoot him because they had their guns drawn. *Id.* at 136, 150.

Holland further admitted that the gas can found outside Moore's mobile home was his, but claimed he deposited it there on another occasion while burning weeds in the area. *Id.* at 143–44. Holland testified that McNutt and Moore must have planted the accessories to the gas can—its cap and funnel—in his car, where police later found them. *Id.* at 139. In the state's rebuttal, Moore testified that he and McNutt did not conspire to frame Holland—and that he did not put a gun in Holland's car. *Id.* at 159–60.

Corporal David Murry—a specialist in computer, cell phone, video and vehicle forensics with the Amarillo Police Department—testified that he analyzed the two videos and determined that they had not been altered. *Id.* at 164. At the conclusion, the jury deliberated for less than fifty minutes before finding Holland guilty of all four charges. *Id.* at 190–91.

LEGAL ANALYSIS

**I. Holland's Trial Error Claims Are Barred (Counts One, Three and Five).**

At the outset, the Court recognizes that the state habeas court considered Holland's trial error claims (Counts One, Three and Five) and denied relief. ECF No. 21-1 at 148–51. "In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding that a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Therefore, because Holland brought these claims in his state habeas petition, he is barred from relitigating his claims in this proceeding unless he meets the exceptions set forth in Sections 2254(d)(1) and (2). *Richter*, 562 U.S. at 98.

To overcome the relitigation bar, Holland must show "that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in

7

existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quoting *Richter*, 562 U.S. at 103); *see also Thomas v. Vannoy*, 898 F.3d 561, 566 (5th Cir. 2018) (reaffirming the relitigation bar). Holland does not meet this high burden. Instead, he merely restates the grounds previously raised in his state habeas application. Because Holland fails to show that the state court erred in denying his claims, he cannot surmount the relitigation bar of Section 2254(d). In addition, as shown below, Holland's trial error arguments also fail.

### A. Denial of Compulsory Process

Holland alleges the trial court erred in failing to issue subpoenas to his two alibi witnesses—his parents—who live in Lubbock, Texas. ECF No. 3 at 5, ECF No. 5 at 11–15. As discussed in more detail herein, Holland proceeded *pro se* for a portion of his criminal case. He claims that, while *pro se*, he filed subpoena applications for both alibi witnesses and written materials but the court failed to issue the subpoenas, thereby violating the Sixth Amendment and his constitutional rights of Due Process and Equal Protection. He also states that the trial court granted his oral motion to issue the subpoenas, but they still were not issued. *Id.*

The Sixth Amendment guarantees a criminal defendant the right to present a defense, including a right to compulsory process of witnesses. *Washington v. Texas*, 388 U.S. 14 (1967). The U.S. Supreme Court has made clear, however, that to establish a violation of the compulsory process right, a petitioner must show more than the mere absence of a defense witness's testimony at trial. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982); *Washington*, 388 U.S. 14. Rather, a petitioner "must at least make some plausible showing of how [the absent witness's] testimony would have been both material and favorable to his defense." *Valenzuela–Bernal*, 458 U.S. at 867 (holding that defendant's compulsory process

8

right was not violated by the deportation of illegal aliens who could be defense witnesses because defendant could not show lost testimony would have been material, favorable, and not merely cumulative); *see also Janecka v. Cockrell*, 301 F.3d 316, 326–27 (5th Cir. 2002) (citing *Valenzuela-Bernal*, court holds that defendant's explanation of how witness testimony might have been material and favorable to his defense is "vague at best" and thus defendant has not shown a violation of his right of compulsory process); *Ashley v. Wainwright*, 639 F.2d 258, 261 (5th Cir. 1981) (no Sixth Amendment right to witness who cannot aid the defense).

### 1. Issuance of Requested Subpoenas

Article 24.03(a) of the Texas Code of Criminal Procedure specifies the procedure to obtain a subpoena, providing that:

> Before the clerk or his deputy shall be required or permitted to issue a subpoena in any felony case pending in any district or criminal district court of this State of which he is clerk or deputy, the defendant or his attorney or the State's attorney shall make an application in writing or by electronic means to such clerk for each witness desired. Such application shall state the name of each witness desired, the location and vocation, if known, and that the testimony of said witness is material to the State or to the defense.

TEX. CODE CRIM. PROC. ANN. art. 24.03(a). At his May 3, 2022, pretrial hearing, Holland told the judge he wanted to subpoena his mother and father and provided their names to the court.[1] ECF No. 17-10 at 51–52. Holland told the court that he delivered two applications for subpoenas to the court clerk, but the subpoenas were not issued. *Id.* at 51. Holland made an oral motion to have the subpoenas issued. *Id.* at 52. The court said it would "direct the Clerk to issue those subpoenas" but "[t]hat doesn't mean they're going to bring you anything, but -- I don't know how it's written either so -- . . . we'll see." *Id.* at 52–53.

---

[1] Holland also sought to subpoena Contessa Perry, but she was subpoenaed by the government and testified at trial; as a result, any claim by Holland that his constitutional rights were violated by the court's failure to issue his subpoena to Perry would fail at the outset. *See* ECF No. 17-13 at 94 *et seq.*

9

The government contends that neither the court docket nor the clerk's record show an application for witness subpoenas filed by Holland. ECF No. 21 at 15. Instead, as the state correctly points out, the relevant records show only that Holland filed an application to subpoena documents from the Amarillo Police Department ("APD"). *Id.*; *see* ECF No. 17-1 at 120. However, in support of his habeas petition, Holland provides two file-stamped Applications for Subpoena: one for APD records and one for witnesses David Holland Sr., Tina Holland and Contessa Perry. *See* ECF No. 26 at 8, 11. The application for witness subpoenas was file-stamped on March 18, 2022, by the Potter County District Clerk and the application for APD documents was file-stamped on March 24, 2022. *Id.*

The application for witness subpoenas does not appear in the trial court record provided by the government in this case, although the application to subpoena APD documents does appear. *See* ECF No. 17-1 at 120. The case summary in the clerk's record indicates that an unspecified Application for Subpoena was filed on March 18, 2022. *See* ECF No. 17-2 at 98. There is no indication in the case summary that subpoenas were issued pursuant to either application. *Id.* at 98–104. The case summary also indicates that a "Letter to Defendant from Judge" regarding an Application for Subpoena was filed on March 24, 2022, but the record before this Court does not include the letter. *Id.* at 98. In short, the record is unclear as to whether the applications were filed, but it appears that none of Holland's requested subpoenas was issued.

### 2. Effect of Failing to Obtain Subpoenas.

Due to the unclear nature of the state court record, the Court assumes that the subpoena applications were filed but the court clerk improperly failed to issue and serve both the witness subpoena and the APD subpoena. However, such failures establish a constitutional violation only if the missing testimony and documents are *material* and

10

favorable to Holland's defense. *Valenzuela–Bernal*, 458 U.S. at 867. Holland has not met this requirement.

In support of his habeas petition, Holland provided nearly identical sworn statements from his parents, in which they set forth the testimony they would have provided had they been called as witnesses. They both state, in pertinent part:

> On April 17th, 2021, David was at Chisum in Shallowater[,] Texas. So, he had to be here that weekend visiting I remember because him and Hollie (Contessa) came as much as they could to help me with his dad and his grandmother who was dying with brain cancer. He also went to the liquor store for us. He left for a while to go to band practice in Kress, TX while Hollie (Contessa) stayed here to visit with us and Norma Holland. He came back and if I remember correctly, he came back and got Hollie (Contessa) and they left late that evening or very early the next morning.

ECF No. 6 at 6, 8. In addition, Holland told the trial court that his parents' "memories are fading, but they can still put me at a place other than the scene of the crime sometime around, but they're not sure on the dates. Their memories have faded." ECF No. 17-10 at 42. In short, testimony from David Holland Sr. and Tina Holland would have shown that Holland was in Lubbock (approximately a two-hour drive from Amarillo) the day before the first incident, and that his parents were unsure whether he returned to Amarillo on April 17 or April 18. Testimony that "if I remember correctly" Holland was in Lubbock until either late evening on April 17 or "very early" on April 18 is not material, especially given the clear eyewitness testimony provided by state witnesses Moore and McNutt—and Holland's admission to the trial court that his parents' memories "have faded." His parents' proposed testimony also does not address Holland's whereabouts on April 25, 2021, the day Holland was found to have set Moore's property on fire.[2]

---

[2] In addition, the affidavits do not indicate what, if any, mitigating character testimony Holland's parents would have provided at punishment. *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) ("Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witness's willingness to testify and the substance of the proposed testimony.").

11

The bank statements Holland sought to subpoena are also immaterial and unfavorable. At best, the records would confirm Holland's presence in Lubbock and Shallowater on April 17, 2021, but not on April 18. ECF No. 6 at 83. The bank statements show that the liquor store purchase in Lubbock occurred on April 17. *Id.* All other Lubbock-based charges shown on the statements are dated April 17; the April 18 charges are for transactions made in Amarillo and Canyon. *Id.* at 83–84. Holland's evidence would not have supported his claim that he was in Lubbock on April 18; instead, the records support the state's position that Holland was in Amarillo on April 18. In addition, the bank records show charges made on April 25 *in Amarillo. Id.* at 87.

Regarding Holland's subpoena application for APD records via TEX. GOV'T CODE Section 552.028, Holland has not demonstrated how the requested documents and testimony were material to his defense or how they would have been favorable to him. ECF No. 5 at 13–15. *See Valenzuela-Bernal*, 458 U.S. at 867. Consequently, Holland has not established that he was harmed by the trial court's failure to issue and serve the APD subpoena.[3]

As discussed, the evidence at trial included eyewitness testimony from persons well acquainted with Holland. Holland and his car were seen on video at Moore's trailer home around 5:30 a.m. on April 18, 2021. There, Holland was recorded pouring gasoline on Moore's truck and shooting at McNutt. His DNA was found on the gun used to shoot at McNutt. Parts from the gas can left at the scene were found in Holland's car. Holland admitted on the stand that the gun and gas can were his. In short, the state provided ample evidence upon which

---

[3] Holland challenges the constitutionality of Section 552.028 "because it makes no exception for an inmate defendant who is proceeding pro se with the court[']s permission." ECF No. 5 at 13. Because the Court finds that Holland was not harmed by the state court's failure to issue the APD subpoena, it does not reach this issue; however, the Court notes that Texas courts have held that the statute does not violate a *pro se* prisoner's right to due process. *See, e.g., Starkey v. Stainton*, 652 S.W.3d 80 (Tex. App.—Fort Worth 2022). Similarly, the Fifth Circuit has held that a prisoner "has no federally-protected right to receive copies of state records." *Field v. Gage*, 550 F. App'x 240, 241 (5th Cir. 2013) (per curiam).

12

the jury could base its guilty verdict. His parents' vague testimony and bank records showing he was in Lubbock on the day before the first incident would not materially affect the verdict.

In summary, Holland failed to meet his burden to show that the witnesses and documents he sought to subpoena were material to his case and favorable to his defense. The state habeas court's decision to deny relief on this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Holland fails to overcome AEDPA's relitigation bar as to this issue. *See* 28 U.S.C. Section 2254(d).

### B. Denial of Requests for Pretrial Investigation Assistance

Holland alleges that his federal constitutional rights were violated when the trial court denied his request for an investigator and forensic video expert. ECF No. 5 at 20–22. The Fifth Circuit holds that non-psychiatric experts should be provided if the evidence is both (1) crucial to the conviction and (2) subject to varying expert opinion. *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993) (citing *Scott v. Louisiana*, 934 F.2d 631, 633 (5th Cir. 1991)). In sum, "[a]n indigent defendant requesting non-psychiatric experts must demonstrate something more than a mere possibility of assistance from a requested expert." *Yohey*, 985 F.2d at 227; *see also Pruett v. Choate*, 711 F. App'x 203, 207 (5th Cir. 2017) ("the defendant 'must demonstrate something more than a mere possibility of assistance from a requested expert' and must show that 'denial of such expert assistance resulted in a fundamentally unfair trial.'" (quoting *Yohey*)). Holland does not meet this requirement.

On February 25, 2022, while proceeding *pro se*, Holland filed a request for the appointment of a private investigator and a video forensics expert. ECF No. 17-1 at 90–92. The motion was heard during the May 3, 2022, pretrial hearing. ECF No. 17-10 at 56–60. At the hearing, Holland requested an investigator to examine a potential familial relationship between APD officer Cody Moore and James Moore. *Id.* at 57. The judge stated he would

13

grant the motion. ECF No. 17-1 at 150–52; ECF No. 17-10 at 58. Also at the pretrial hearing, however, Cody Moore testified that there was no familial relationship between James Moore and himself. ECF 17-10 at 37. Regarding his request for appointment of a forensic video expert, Holland alleged that the video evidence must have been altered, because he "wasn't there." *Id.* at 57–59. The judge stated that, if Holland provided the name of a proposed expert, the court would "certainly think about that." *Id.* at 58. Holland stated that he would put a letter in the mail to the judge that night naming a suggested video expert. *Id.* at 59.

On May 4, 2022, the day after the pretrial hearing, the judge entered a written order revising his oral rulings. The written order stated that the court would not appoint an investigator as to the Cody Moore-James Moore familial relationship because an independent investigation was already conducted. Such investigation revealed no familial relationship, so it was "highly unlikely a further investigation would be successful." ECF No. 6 at 93. The order further noted that Holland had not met his burden to establish his need for such investigation. *Id.* The written order also stated that the court would not *sua sponte* appoint an expert to review video evidence to determine if it had been "doctored." *Id.* There is no indication in the record that Holland ever provided the name of a proposed video expert to the court, and no video expert was appointed. Holland contends that the judge "changed his mind" before Holland could provide the name of his proposed expert.[4] ECF No. 5 at 20.

Holland alleges that an investigator could have obtained (1) depositions from his alibi witnesses (David Holland Sr. and Tina Holland) and (2) his bank records and video footage from the businesses he visited in Lubbock to corroborate his alibi witnesses' testimony. ECF No. 5 at 21. He further claims that a video forensics expert would have "rebut[ted] the State[']s expert witness testimony." *Id.* Holland fails to meet the second prong of *Yohey*

---

[4] Holland's allegation that his motions were denied simply because he is not an attorney (ECF No. 5 at 21) is unsupported and meritless.

14

because he does not allege anything more than a mere possibility of assistance from the investigator and expert, nor has he shown that the denial of his requested experts "resulted in a fundamentally unfair trial." *Pruett*, 711 F. App'x at 207. As shown above, the evidence he claims the investigator could have obtained was immaterial and would not have affected the outcome of his trial. His request for a video forensics expert was based solely on the *mere possibility* and Holland's unsupported speculation that the video was altered. In addition, he failed to comply with the trial court's order to provide the name of a proposed expert for the court to appoint.

Holland has not overcome the AEDPA relitigation bar because he fails to establish that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *See White*, 572 U.S. at 419. Accordingly, he is not entitled to relief on this basis.

### C. Holland's Right to a Speedy Trial

Holland alleges he was denied a speedy trial due to the one year, 13 days he was incarcerated before trial began. ECF No. 3 at 12; ECF No. 5 at 7, 23–27. The Sixth Amendment to the U.S. Constitution guarantees an accused in a criminal prosecution the right to a speedy trial. *See* U.S. CONST. AMEND. VI. In habeas review of a state prisoner's speedy trial claim, federal courts must "give the widest of latitude to a state court's conduct of its speedy-trial analysis." *Russell v. Denmark*, 68 F.4th 252, 262 (5th Cir. 2023), *quoting Barker v. Wingo*, 407 U.S. 514 (1972). In applying that latitude, the AEDPA limits habeas review to a determination solely of whether a state court's adjudication resulted in a decision that warrants relief under the AEDPA's standard. 28 U.S.C. Section 2254(d).

In evaluating a speedy-trial claim, courts look to the four factors delineated in *Barker*: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant. *Russell*, 68 F.4th at 262 (citing *Barker*, 407 U.S. at 529–34). In reviewing a state court's application of the *Barker* factors, the "always-substantial deference" afforded to state courts in federal habeas review "is at an apex" because the factors are "a broad, general standard whose application to a specific case can demand a substantial element of judgment." *Amos*, 646 F.3d at 205 (internal quotation omitted). A federal court's disagreement with the state court's weighing of individual *Barker* factors is not itself grounds for reversal. *Goodrum v. Quarterman*, 547 F.3d 249, 265-66 (5th Cir. 2008). Rather, under the AEDPA, this Court may disagree with "some of the state court's preliminary conclusions" but nonetheless must deny relief if the state court's ultimate decision is objectively reasonable and not contrary to law. *Id.*

Under AEDPA, "we review the last reasoned state court decision." *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014) (internal quotation omitted). "Using the 'look through' doctrine, we ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Id.* (internal quotation omitted). In this case, the Court will "look through" the unexplained denials of Holland's PDR (ECF No. 17-32) and his state habeas claims (ECF No. 17-48) and instead look to the Seventh District Court of Appeals' reasoned determination of the *Barker* factors in Holland's direct appeal. *See Holland*, 2023 WL 3179233; ECF No. 17-16.

The Seventh District's opinion included the following recitation of relevant facts:

Appellant was arrested in May of 2021. He requested and received appointed counsel. On June 2, 2021, he was charged by indictment for arson of a habitation, unlawful possession of a firearm by a felon, and evading arrest with a motor vehicle. On July 2, 2021, he was charged by indictment with aggravated assault with a deadly weapon. The charges were enhanced by a prior felony conviction for organized crime—aggravated robbery.

16

The first three charges were set for trial on September 27, 2021. On September 9, the State sought a continuance because the results of DNA testing of evidence had not yet been received from the crime laboratory. The trial court granted the continuance. In October, Appellant filed a *pro se* motion for speedy trial in the arson case. In November, he filed a *pro se* motion for speedy trial in all four cases. At the time he filed these motions, Appellant was represented by appointed counsel and there is no indication in the record that the trial court was aware of or acted on Appellant's *pro se* motions.

In January of 2022, Appellant's appointed counsel filed a motion to withdraw. At the hearing on the motion, Appellant argued, among other things, that no one had investigated his case and that his lawyer had not done things he asked him to do. In response to Appellant's statement that he had "asked for a motion for speedy trial," the trial court answered that the issue was resolved, as Appellant's case was set for trial in April. The trial court granted Appellant's request to represent himself and designated Appellant's appointed counsel as a standby lawyer. After filing several motions, in February Appellant filed a request for a pretrial hearing on his motions to reduce bond, to suppress evidence, for discovery, and requesting funds for investigative expenses. Appellant requested that the pretrial hearing be set sufficiently in advance of trial "so as to enable [Appellant] to properly prepare for the trial." The pretrial hearing was set for March 21. Appellant then filed a request that the trial court appoint a video forensics expert and private investigator, alleging they were essential to a fair trial. Various other filings by Appellant followed, including a motion to dismiss filed in March on the grounds that his right to a speedy trial had been violated.

Appellant urged his motions at the May 3, 2022 hearing on pretrial motions. The trial court observed that Appellant's case was first on the docket for the May 23 trial setting and further noted for the record "how many other cases are still pending ahead of you because of COVID and all the other issues that we've had" as a result. The trial court overruled Appellant's motion. Appellant pleaded not guilty to all charges and the cases proceeded to a jury trial on May 23, 2022.

*Holland*, 2023 WL 3179233 at *1-2. Based on these findings, the Seventh Court found that

Holland's speedy trial right was not violated. As shown herein, such finding is not "so lacking

in justification" that Holland surmounts the relitigation bar. *See Richter*, 562 U.S. at 103.

### 1. Length of Delay

When calculating delay, a defendant's speedy-trial right "attaches at the time of arrest

or indictment, whichever comes first." *Amos*, 646 F.3d at 206. Holland was arrested on May

10, 2021, and his trial ultimately began on May 23, 2022, resulting in a delay of one year and

17

13 days. *Holland*, 2023 WL 3179233 at *3. The state court found that the delay warranted

consideration of the remaining *Barker* factors:

> Although Appellant's four felony charges make the case both serious and complex, we deem the one-year delay sufficient to trigger an analysis of the remaining *Barker* factors. However, because the delay just exceeds the one-year mark, this first factor does not weigh heavily in favor of finding a violation of Appellant's speedy trial right.

*Id.*; *see Goodrum*, 547 F.3d at 257 (viewing a delay of one year or more as presumptively

prejudicial); *Amos*, 646 F.3d at 206–07 (a delay of more than 30 months weighs heavily

against the state). The "presumptive prejudice" found after a one-year delay "simply marks

the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry."

*Doggett v. United States*, 505 U.S. 647, 652 (1992). The court must then "make findings

regarding the remaining three [*Barker*] factors and balance all accordingly." *Robinson v.

Whitley*, 2 F.3d 562, 568 (5th Cir. 1993) (citing *Barker*, 407 U.S. at 530).

### 2. Remaining *Barker* Factors

The state court evaluated the remaining *Barker* factors to determine that Holland's

speedy-trial right was not violated. *Holland*, 2023 WL 3179233 at *3. Regarding the second

factor (reason for the delay), the state court noted that the delay was due to two issues: (1)

the state awaiting the results of forensic analysis from the Lubbock Crime Laboratory; and

(2) the trial court's crowded docket. *Id.* The court found that "[t]hese neutral reasons weigh

against the government, but not heavily" because there was no indication that the state

deliberately delayed the trial for tactical reasons. *Id.*

Regarding the third factor (the defendant's assertion of his right), the state court

noted that Holland filed two *pro se* motions for a speedy trial in October and November of

2021, while he was represented by counsel. "A defendant has no right to hybrid

representation and the trial court is free to disregard any *pro se* motions presented by a

18

defendant who is represented by counsel." *Id.* (citing *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007)). Accordingly, the state court disregarded these motions. Holland next made a request for a speedy trial in January 2022, at the time he was granted leave to proceed *pro se* and his appointed counsel was placed as standby counsel. ECF No. 17-9 at 7. The trial court advised him that the issue was resolved, because trial already was set for April 2022. *Id.* Although trial subsequently was moved to May 23, 2022, the state appellate court noted that Holland moved for additional forensic and investigative resources to prepare his defense and, as late as April 2022, referenced his need to "properly prepare for trial." ECF No. 17-16 at 7–8. The state court determined that this factor weighed in favor of the state.[5]

The last *Barker* factor addresses the prejudice, if any, suffered by the defendant as a result of the delay. The state court determined that Holland had not shown prejudice. Holland argued that trial delay prejudiced him because his grandmother, who would have been an alibi witness, died during the delay. However, because she died "a mere two months after [Holland] was indicted," the state court determined that her unavailability was not attributable to a delay in bringing Holland to trial.[6] *Id.* Accordingly, the state court found that "any delay in bringing Appellant to trial was not violative of his constitutional rights under either the federal or the state constitution." *Id.*

Holland argues that the state court's opinion constitutes an unreasonable application of "clearly established" federal law because it creates a requirement that a defendant must "cease trial preparation . . . or be forced to waive any prejudice already caused by delay." ECF

---

[5] Although not noted by the appellate court in its written opinion, the record shows that the trial court heard Holland's March 3, 2022, motion to dismiss on speedy trial grounds at the May 3, 2022, pretrial hearing. ECF No. 17-10 at 38–44. The trial court overruled the motion because, in part, trial already was set on the next available trial date, May 23, 2022. *Id.* at 43–44. Holland's trial was first on the docket, ahead of at least 35 cases pending before his, to ensure that it would proceed. *Id.* at 44.
[6] The appellate court noted that, when a witness dies prior to trial, the loss does not factor into the assessment of prejudice unless the witness died during a period of delay attributable to the State. *See, e.g., State v. Davis*, 549 S.W.3d 688, 708–09 (Tex. App.—Austin 2017, no pet.).

No. 5 at 8. The Court disagrees. The state court made no such requirement; instead, it simply noted in weighing the *Barker* factors that Holland appeared to be unready for trial in late April 2022 due to his requests for an investigator and video expert. This is not an unreasonable interpretation of Holland's position as evidenced by the trial court record.

While Holland disagrees with the weight accorded the *Barker* factors by the state court, he has not established that the state court's ruling was so lacking in justification that there was an error "beyond any possibility for fair-minded disagreement." *See, e.g., Goodrum*, 547 F.3d at 257–61 (finding that state court's ruling was not objectively unreasonable when, although two of the first three *Barker* factors weighed heavily in favor of defendant and prejudice prong was not satisfied, the court determined that the defendant's speedy trial rights were not violated). In evaluating the state court's reasoned decision, this Court cannot hold that the decision was objectively unreasonable or inconsistent with federal law such that Holland overcomes both the relitigation bar and the AEDPA's deferential standard, despite the almost 13-month interval between arrest and trial. *See Russell*, 68 F.4th at 265; *Richter*, 562 U.S. at 102. Therefore, Holland's speedy-trial claim fails.

## II. Holland's Ineffective Assistance Claim Fails.

Holland argues that his trial counsel was ineffective because, during the pretrial phase of his case, he filed a grievance against his attorney, Jeffrey A. Hill, and Hill subsequently filed a motion to withdraw. *See* ECF No. 17-1 at 48. The court held a hearing on the motion to withdraw on January 19, 2022. At the hearing, Hill told the judge that "Mr. Holland has filed a grievance against me; that makes me adverse to him. We have an inability to communicate. We have zero agreement on what the trial strategy should be in this case . . . . I just can't defend the man." ECF No. 17-9 at 6. Holland told the judge that he felt like he was "getting railroaded" and that no one had investigated the case. *Id.* He said he also wanted Hill to file a motion for speedy trial, as well as a bond reduction, but Hill failed to do

so. *Id.* at 7. The trial judge noted that Hill, in fact, filed a motion for bond reduction, and that the speedy trial issue was resolved because trial was set for April 2022. *Id.* Holland admitted that the problem stemmed from Hill telling him the prosecution's position and him becoming upset by it. *Id.* at 7–8. Holland requested to proceed *pro se. Id.* The judge granted Holland's motion, and appointed Hill as standby counsel.[7] *Id.* On the second day of trial, Hill was reinstated as lead counsel at Holland's request—made in open court during the state's direct examination of James Moore. ECF No. 5 at 15; ECF No. 17-12 at 141–42.

The Court reviews claims of ineffective assistance under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted). In light of the deference accorded by Section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101. As the Supreme Court clarified in *Richter*:

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

---

[7] Holland also complains that the trial court violated his rights by not placing Hill at the defendant's table during trial while Hill was serving as standby counsel. ECF No. 26 at 4. However, Holland fails to show how he was prejudiced by this arrangement, especially since the judge instructed both Holland and the jury at the outset that "if Mr. Holland has any questions, then he will be permitted, of course, to go over and ask Mr. Hill anything he chooses . . . ." ECF No. 17-2 at 16. There is no indication in the record, nor does Holland argue, that he was denied access to Hill while proceeding *pro se* at trial.

To establish ineffective assistance of at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 688. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

At the outset, the Court notes that Holland represented himself from January 19, 2022, to May 23, 2022. ECF No. 5 at 15. A defendant who waives his right to counsel and opts to proceed *pro se* "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)). Accordingly, his ineffective assistance claims will be evaluated only for the time he was represented by counsel. Assuming Hill was ineffective due to their undisputedly contentious relationship,[8] Holland has failed to show that he was prejudiced by any ineffective assistance provided by Hill, as is required by *Strickland* before habeas relief may be granted by this Court.

---

[8] At the hearing on Hill's Motion to Withdraw, Hill told the trial court that he "will not be an effective counsel at this point" due to Holland's lack of trust in him and their inability to effectively communicate. ECF No. 17-9 at 10. To the extent that Holland complains that the trial court did not "replace trial counsel Hill with counsel not openly adverse to Petitioner" (ECF No. 26 at 2), the Court notes that Holland did not ask the trial court to replace Hill. Instead, he asked to proceed *pro se*, which the court allowed. *Id.* at 6.

22

*A. Failure to Subpoena Witnesses/Provide Mitigating Evidence*

Holland claims that Hill was deficient in failing to (1) call his alibi witnesses, David Holland Sr. and Tina Holland, and (2) present mitigating character evidence. ECF No. 5 at 15; ECF No. 26 at 4. As shown above, had counsel called Holland's parents as alibi witnesses, their proposed testimony would not have provided an alibi for the time in question such that Holland was prejudiced by counsel's failure to call them. In addition, he fails to show any other mitigating evidence that counsel should have provided but did not. *See, e.g.*, ECF No. 26 at 4. Holland fails to meet his burden to show that he was prejudiced by Hill's alleged ineffectiveness as to this issue.

*B. Failure to Assert Speedy Trial Rights*

Similarly, Holland fails to show he was prejudiced by Hill's failure to file a speedy trial motion from the time Hill was appointed on May 12, 2021 (ECF No. 17-1 at 12), through January 19, 2022, when the trial court granted Holland's motion to proceed *pro se*.[9]

Holland admits that Hill objected to the state's first request for continuance filed on September 9, 2021, which was granted over defense objections at a hearing on September 21, 2021. ECF No. 5 at 25. The fact that counsel's challenge to the continuance was unsuccessful does not render counsel ineffective. *See, e.g., Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) ("The fact that trial counsel was unsuccessful in his efforts does not constitute, in light of the entire record, a basis for habeas corpus relief."); *see also Jones v. United States*, No. 3:19-cv-01461-D-BT, 2021 WL 5017342 (N.D. Tex. 2021) ("Habeas relief is not warranted where, as here, counsel tried but was not successful in his efforts to persuade the court."). Hill clearly asserted Holland's objection to a continuance, but such objection was overruled.

---

[9] Given that trial already had commenced when Hill was reinstated as trial counsel on May 23, 2022, no request for a speedy trial was warranted at that point.

23

Further, Holland's argument that an earlier motion would have caused the state appellate court to weigh the *Barker* factors more favorably is mere speculation. *See* ECF No. 5 at 16.

Holland claims that he was prejudiced by the delay simply because the delay exceeded one year. However, the one-year timeframe is not the sole determination of prejudice. *Barker* holds that a delay of more than one year is "presumptively" prejudicial, which then triggers the court's consideration of the remaining *Barker* factors, as shown above. Holland alleges he was prejudiced by the trial delay because his grandmother, an alibi witness, died on August 2, 2021. ECF No. 17-10 at 41–42. However, his grandmother died less than two months after Holland was indicted, before the state sought its first continuance, and before the first trial setting of September 27, 2021. ECF No. 17-1 at 22. Therefore, Holland fails to show that he was prejudiced by Hill's failure to file a speedy trial motion.

### C. Failure to Investigate

Holland next alleges that Hill was ineffective in failing to conduct a thorough pretrial investigation. Defense counsel must engage in a reasonable amount of pretrial investigation and "at a minimum . . . make an independent investigation of the facts and circumstances of the case." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985). There are no strict rules for counsel's conduct, however, beyond the general requirement of reasonableness. *See Trottie v. Stephens*, 720 F.3d 231, 242 (5th Cir. 2013).

Holland complains that his counsel failed to "conduct an independent investigation into available alibi witnesses, documentary evidence, and mitigating character testimony. ECF No. 5 at 17. However, as shown above, the testimony of his parents and use of his bank statements would not have changed the outcome in Holland's case, and he does not identify any other evidence that would have altered the trajectory of his case. Accordingly, he has not shown that he was prejudiced by any failure to investigate.

### III. Holland's Ineffective *Appellate* Counsel Claim is Meritless.

Holland alleges his appellate counsel was ineffective by failing to appeal any issue this Court may find meritorious, and further complains that appellate counsel "refused [Holland's] attempts to assist in the preparation of the direct appeal." ECF No. 5 at 22. To prevail, Holland must satisfy the two-pronged *Strickland* test, 466 U.S. at 668. *See Smith v. Robbins*, 528 U.S. 259, 284-85 (2000) (proper standard for evaluating appellate counsel is *Strickland*). Thus, as shown above, Holland must demonstrate counsel was deficient, and that the deficiency prejudiced his case. *Strickland*, 466 U.S. at 687.

Appellate counsel need not raise every non-frivolous issue on appeal to be constitutionally effective. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful . . . . Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348. As shown above, the issues raised by Holland herein and not raised by appellate counsel were without merit, and accordingly do not provide a viable basis for Holland's ineffective assistance of appellate counsel claim. Further, Holland does not state what specific assistance appellate counsel refused from him.

To show prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's alleged deficient performance, the jury would have found him not guilty or he

would have received a lower sentence. *See Strickland*, 466 U.S. at 694. Holland's conclusory statement of prejudice is insufficient to obtain relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998). "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Holland's ineffective assistance of appellate counsel claim is meritless.

CONCLUSION

For the reasons stated above, Holland's petition for writ of habeas corpus (ECF No. 3) is **DENIED** with prejudice.

**SO ORDERED.**

June **25**, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE